## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

Sharajonnie L. Adams            )
                                )
_____ )
                                )
_____ )    CIVIL ACTION
(Name of the plaintiff or plaintiffs)  )
                                )
          v.                    )    NO._____26-2087_____
                                )
The Carle Foundation            )
                                )
_____ )
                                )
_____ )
(Name of the defendant or defendants)  )

### COMPLAINT OF EMPLOYMENT DISCRIMINATION

1.  Plaintiff ☐ DOES ☒ DOES NOT demand a jury trial.

### I. PARTIES

2.  The plaintiff is _Sharajonnie  L. Adams_____,

whose street address is _1902 Winchester Drive_____,

(city) _Champaign_____ (state) _Illinois_____ (ZIP) 61821___

(Plaintiff's telephone number)     (217) – _974-6777_____

3.  The defendant is _The Carle Foundation (FEIN 37-0673465)_____, whose

street address is _611 West Park Street_____,

(city) _Urbana_____ (state) _Illinois_____ (ZIP) 61801___

(Defendant's telephone number)     (217) – _383-3311_____

4.  The alleged discrimination occurred at _4116 Fieldstone Road_____

(city) _Champaign_____ (state) _Illinois_____ (ZIP) 61822___

5.  The plaintiff [*check one box*]

   (a) ☐    was denied employment by the defendant.

   (b) ☐    was hired and is still employed by the defendant.

   (c) ☒    was employed but is no longer employed by the defendant.

6.  The defendant discriminated against the plaintiff on or about, or beginning on or about,

   (month)____July____, (day)__1____, (year)__2024__.

**II. JURISDICTION**

7.  Jurisdiction over this claim is based on 28 U.S.C. § 1331.  Plaintiff alleges that the

   defendant(s) discriminated against Plaintiff because of Plaintiff's:

   ☐ Age (The Age Discrimination in Employment Act, 29 U.S.C. § 621)

   ☒ Color (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e)

   ☒ Disability (The Americans with Disabilities Act, 42 U.S.C. § 12101 and/or The

         Rehabilitation Act, 29 U.S.C. § 701)

   ☐ National Origin (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e)

   ☒ Race (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e)

   ☐ Race (42 U.S.C. § 1981)

   ☐ Religion  (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e)

   ☐ Sex/Gender (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e)

   ☐ Sex/Gender (Equal Pay Act, 29 U.S.C. § 206)

   ☒ Use of Leave (Family and Medical Leave Act, 29 U.S.C. § 2611)

   ☒ Other (list):  Workplace Safety (Occupational Safety and Health Act of 1970, as
         amended, 29 U.S.C. § 654(a)(1))

8.  Plaintiff ☒ HAS ☐ HAS NOT filed a charge before the United States Equal Employment

   Opportunity Commission (EEOC) relating to this claim of employment discrimination.

   **[Attach a copy of charge to this complaint.]**

9.  Plaintiff ☐ HAS ☒ HAS NOT filed a charge before the Illinois Department of Human Rights

   (IDHR) relating to this claim of employment discrimination. **[Attach a copy of charge to**

   **this complaint.]**

10. Plaintiff ☒ HAS ☐ HAS NOT received a Right to Sue Notice.  If yes, Plaintiff's Right to Sue Notice was received on or about (date)  January 12, 2026                              .

    **[Attach copy of Notice of Right to Sue to this complaint.]**

### III.  FACTS IN SUPPORT OF CLAIM

11. The defendant intentionally discriminated against Plaintiff [*check only those that apply*]:

    (a) ☒        by failing to hire the plaintiff.

    (b) ☒        by terminating the plaintiff's employment.

    (c) ☒        by failing to promote the plaintiff.

    (d) ☒        by failing to stop harassment;

    (e) ☒        by failing to reasonably accommodate the plaintiff's disabilities.

    (f) ☐        by failing to reasonably accommodate the plaintiff's religion.

    (g) ☒        by retaliating against the plaintiff because the plaintiff did something to assert rights protected by the laws;

    (h) ☒        by coercing, intimidating, threatening or interfering with the plaintiff's exercise or enjoyment of rights;

    (i) ☒        with respect to the compensation, terms, conditions, or privileges of employment;

    (j) ☒        other (specify): by failing to stop workplace violence

    _____

    _____

    _____

    _____

    _____

3

12. State here briefly and as clearly as possible the essential facts of your claim.  Describe precisely how each defendant in this action is involved.  Give dates and places.  Concentrate on describing as clearly and simply as possible what employment action or situation you allege to have been illegal and how it violated your rights.  It is not necessary to make legal arguments or cite any cases or statutes.

Please read the attached document outlining the chronology in

narrative form.

13. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

(a) ☐    Direct the defendant to hire the plaintiff.

(b) ☒    Direct the defendant to re-employ the plaintiff.

(c) ☒    Direct the defendant to promote the plaintiff.

(d) ☐    Direct the defendant to reasonably accommodate the plaintiff's religion.

(e) ☒    Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f) ☒    Direct the defendant to (specify): Expunge the following from the plaintiff's employee file:

-Employee Disciplinary Action dated 6/5/2025

-Employee Disciplinary Action dated 8/27/2025

-Employee Disciplinary Action dated 12/4/2025

-Team Member Evaluation acknowledged by the plaintiff on 9/10/2025

• Change the plaintiff's employee profile status to "eligible for rehire "


(g) [X]    If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) [X]    Grant such other relief as the Court may find appropriate.


*Sharajonnie L. Adams*
(Plaintiff's signature)

Sharajonnie L. Adams
(Plaintiff's name)

_____

 1902 Winchester Drive
(Plaintiff's street address)

(City) Champaign    (State) Illinois    (ZIP) 61821

(Plaintiff's telephone number) (217) – 974-6777


Date: _____

5

The sequence of events presented herein are outlined in chronological order, and can be authenticated by records of emails, phone calls, company policies, and complaints filed with relevant agencies that have been retained by the plaintiff.

6/27/24 ADA reasonable accommodation completed by the plaintiff, requesting temporary accommodations related to post-concussion syndrome from head injury sustained in a motor vehicle accident on 6/14/24. The request was never accommodated.

7/1/24 is the first *documented* incident of racial discrimination in the workplace, wherein the plaintiff reported to human resources an incident in which a team member, Beth Novak, prefaced a personal anecdote by saying, "I don't mean any offense, but my dad used to call me a little 'spook' when I was a kid." In the email, the plaintiff reported becoming increasingly uncomfortable on the job. No measures to improve the work environment were taken. The team member, Beth Novak, remained in the same workspace.

Manager Kelly Matson, left the department in November 2024, which created a job vacancy and opportunity for promotion. The plaintiff spoke with then supervisor, Lalitha Mathew, and emailed HR Recruiter, Chrissy Anaker, prior to applying for promotion; neither of whom informed the plaintiff that she did not qualify prior to submission of an application or presentation for an interview.

On 2/5/25, the plaintiff was denied a promotion and verbally accosted during the virtual interview process by Executive Director Bonny Kohr. Reason stated that the plaintiff did not qualify for the position is because the plaintiff did not have home health supervisory experience, said criteria was not written in the job posting description. Bonny Kohr also stated that the BSN degree was required to obtain a management position, and the plaintiff requested documentation of this regulation and/or Carle policy--which was not addressed.

Carle HR-Equal Employment Opportunity policy in the Statement of Policy, Section A states, "…Carle Health supports the concepts of Equal Employment Opportunity and pledges to conduct all personnel transactions without (i) discrimination because of…matriculation…" The Carle Foundation was in violation of their company policy with the denial of the plaintiff's promotion.

On 5/7/25 an inquiry was submitted to the EEOC by the plaintiff regarding repeated instances of verbal aggression (acts of *intimidation*), citing a hostile work environment and retaliation for complaining to employer about discrimination in the workplace.

The original documentation for the ADA Reasonable Accommodation Request related to chronic conditions including, but not limited to, Attention-Deficit Hyperactivity Disorder, Post-Traumatic Stress Syndrome, Anxiety, and Panic Attacks was submitted 5/5/25 via Workday. 5/13/25, at which pint there had been no response, ADA Reasonable Accommodation documents submitted to Katie Bailliez (HR Business Partner) via email attachment. 5/15/25, the plaintiff notified Katie Bailliez via email that the space provided did not meet criteria as specified by the plaintiff's physician. Said email includes photos if the workspace provided.

On 5/27/25, the plaintiff requested via email with then supervisor, Brandee Cowley to move her workspace to a slightly more secluded area, that had recently become vacant. The request was *denied*. Criteria for ADA reasonable accommodation were *never met* during the time of the plaintiff's employment.

After the plaintiff submitted ADA reasonable accommodation outlined by the plaintiff's physician, then supervisor, Brandee Cowley discriminated against the plaintiff in the *conditions of employment* by reducing the plaintiff's working hours from 40 hours/week to 36 hours/week while simultaneously increasing the FTE of a recently hired coworker. There was also a vacancy was posted for the plaintiff's same position at this time.

This was reported to Katie Bailliez on 5/28/25 via email which included screenshots of the vacancy posted for an RN Intake coordinator and a screenshot of a Microsoft Teams message of Brandee Cowley congratulating the new hire on their increase in FTE.

On 6/5/25, then supervisor, Bradee Cowley *retaliated* against the plaintiff for reporting unfair terms and conditions of employment by administering disciplinary action which contained inaccurate/erroneous allegations. Times included on the disciplinary action incorrect. Moreover, during the disciplinary meeting, Brandee Cowley accused the plaintiff of not attending an event for which the plaintiff was in fact present.

Documented on the disciplinary action form, the plaintiff was described as having behavioral issues and blamed for creating a hostile work environment. This assertion was made *subsequent* to the inquiry that the plaintiff submitted to EEOC regarding concerns in the work environment on 5/7/25.

On 6/9/25, the plaintiff filed an internal grievance regarding the disciplinary action administered on 6/5/25. The plaintiff received a grievance outcome notification from Katie Bailliez on 6/20/25 in which the Executive Director Bonny Kohr and Vice President Julianna Sellett denied all associated requests.

On 6/23/25, the plaintiff emailed Kaite Bailliez, asking if the organization could describe what prevent the company from providing a single-person workspace and/or remote accommodations as outlined in the reasonable accommodation request, to which there was no response.

On 7/28/25, while performing routine job duties at Carle Health on Fieldstone Administrative Center, a team member, Marty Johnson, accused the plaintiff of stealing a package of copy paper. *The plaintiff reported this incident of harassment* via Syntrio. In a telephone conversation between the plaintiff and Katie Bailliez on 8/6/26, she acknowledged that there was no signage near the copy paper.

The plaintiff attempted to transfer out of the home care department to another department. The plaintiff received an email from Katie Bailliez on 8/18/2025 expressing her support to transfer to another area of the health system.

At the conclusion of the internal investigation regarding harassment *reported by the plaintiff*, the plaintiff received a final written warning in *retaliation* to reporting harassment by another team member, which was administered on 8/27/25 by, then supervisor, Anne Markovich in collaboration with Brandee Cowley. Said disciplinary action instructed the plaintiff to stop using the anonymous report system, Syntrio, that is available to all employees. The harasser, Marty Johnson, remained in the same workspace.

Furthermore, before the plaintiff was able to transfer another department, Brandee Cowley rated the plaintiff as a "low performer" on the team member evaluation acknowledged 9/10/25 by the plaintiff; which, in conjunction with the final written warning administered on 8/27/25, prevented the plaintiff from being considered for other positions for the next year, per company policy.

The low-performer score was an act of *retaliation*. In the plaintiff's acknowledgment of the nursing performance evaluation the plaintiff reported that it was her observation that many of the comments made by my manager were formed based on slander and/or libel.

Assertions regarding the plaintiff's behavior and/or performance were not objectively supported. In the acknowledgement, the plaintiff refuted all allegations therein which defamed her character and were actively damaging her reputation and limiting her professional opportunities for development and advancement within the organization.

On October 6, 2025, Anne Markovich requested that plaintiff report to her office located in Carle Health on Fieldstone Administrative Center to have a conversation with her. En route, Heidi Morris approached the plaintiff in the corridor in front of Anne's office, the door was ajar. Anne sat at her desk facing the doorway and Collin Steidinger stood in Anne's office facing Anne. Initially, Heidi and the plaintiff were standing just outside of Anne's office discussing a referral for an incoming patient when Heidi pushed the plaintiff without warning or provocation, using both hands one on each shoulder. The plaintiff stumbled backward, but regained her balance. Heidi stated, "I pushed her!" At which point the plaintiff made eye contact with Anne and said, "Heidi pushed me."

The plaintiff then entered Anne's office where the plaintiff's supervisor requested information about a 'mat.' Colin Steidinger was still present and remarked, "She's not going to do it." He then left the office. Heidi still standing in the corridor shut the door behind them. Anne began interrogating the plaintiff about an event that occurred in her absence. At no point during this interaction was a statement taken, nor were security, emergency services, or law enforcement notified. Anne Markovich, the plaintiff's supervisor, witnessed the incident and *failed to stop workplace violence*. The Director, Edward Boyer III, was out of the office at the time of this event.

On 10/23/25, Heidi Morris, again, approached the plaintiff to discuss a patient's referral. In the course of discussion, Heidi stated, "We aren't taking workman's comp referrals that haven't been approved by Bonny. I got my hand slapped *really* hard when I did that one time!" This act of intimidation was reported to the department Director,

Edward Boyer III via email immediately after the event. The Manager, Anne Markovich, was out of the office at the time of this event.

On 11/19/25, the plaintiff emailed Anne Markovich and Edward Boyer III to inquire about any relevant updates in the matter concerning workplace violence, to which there was no reply.

On 11/21/25, with verbal authorization from the department Director, Edward Boyer III, the email inquiry on workplace violence (originally sent 11/19/25) was forwarded to human resources.

On 12/4/25, the plaintiff was terminated by the organization for a partial day absence *that was covered by FMLA.* The termination cites violation of the company's attendance policy as reason for termination. In Section H of the Statement of Policy, in the attendance policy held by The Carle Foundation, it is plainly noted that, "Whole or partial days of unscheduled absence that qualify as Family Medical Leave of Absence (FMLA) or personal time off for PRN team members time will not subject an employee to disciplinary action."

The preceding policy indicates that disciplinary action administered by Anne Markovich, an agent of The Carle Foundation is in violation of a known, reasonable company rule. Moreover, in consideration of the misconduct exhibited by The Carle Foundation, said associated disciplinary action may be construed as wrongful termination. Heidi Morris was out of the office at the time of the plaintiff's termination.

At the time of discharge, the plaintiff had not been involved in any investigation regarding the incident of workplace violence, occurring on 10/6/25, against the plaintiff by Heidi Morris. The Carle Foundation complied with the criteria outlined in the plaintiff's request for ADA reasonable accommodations, which was initially filed in May 2025.